IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| MICHAEL THOMAS ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 321-023 |
| ) | |
| MS. SUSAN OLIVER, Nurse Practitioner, ) | |
| and MS. PAMELA LINDSEY, Nurse ) | |
| Practitioner, ) | |
| ) | |
| Defendant. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, formerly incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia, commenced the above-captioned civil rights case *pro se* and *in forma pauperis* ("IFP"). Defendants filed a pre-answer motion to dismiss, (doc. no. 26), which Plaintiff opposes, (doc. nos. 41, 45). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**.

I. BACKGROUND

A. Procedural History

Plaintiff originally filed this case in the Middle District of Georgia by submitting a complaint dated October 13, 2020, alleging multiple members of the medical staff at JSP failed to properly administer his prescribed insulin "from August 2019 till September 2020." (Doc. no. 1, pp. 4-5.) In addition to the "Medical Staff" at JSP and the Georgia Department of Corrections ("DOC"), Plaintiff individually named Nurse Practitioners Oliver and Lindsey

as Defendants. (Id. at 3.) United States District Judge Tilman E. Self, III, dismissed the DOC and transferred the case to the Southern District of Georgia on March 16, 2021. (Doc. no. 8.)

Upon arrival in this District, the Court screened the complaint, and the JSP Medical Staff, as well as any claims for relief in the form of immediate release from prison and/or expungement of Plaintiff's criminal record were dismissed without objection from Plaintiff. (See doc. nos. 12, 15.) The Court permitted Plaintiff's Eighth Amendment claim for deliberate indifference to proceed against Defendants Oliver and Lindsey. (See doc. no. 14.) Defendants move to dismiss, arguing "[i]nsofar as Plaintiff claims money damages against Defendants in their official capacity," those clams are not cognizable and should be dismissed. (See doc. no. 26-1, pp. 2-4). Defendants further argue the entire case must be dismissed because Plaintiff failed to properly exhaust his administrative remedies prior to filing his complaint. (See id. at 4-10.) Plaintiff does not contest Defendants' argument regarding dismissal of any official capacity claims for monetary damages, but he argues prison officials refused to give him a grievance form until after he filed his lawsuit. (Doc. nos. 1, 5, 41-1.)

**B.     Complaint Allegations**

With respect to Defendant Oliver and Lindsey and the claims raised against them which remain in the case, Plaintiff alleges the following facts in his complaint. Plaintiff is a diabetic who is prescribed insulin. (Doc. no. 1, p. 4.) Even though he is supposed to receive insulin three times per day, during his incarceration at JSP, he did not always receive his insulin at the correct time, and there were days when he only received one dose. (Id.) Plaintiff repeatedly notified Defendants Oliver and Lindsey of the problems regarding his insulin, but the

issue was not corrected. (Id.) Plaintiff was denied a grievance form when he tried to raise the issues through the JSP administrative process. (Id. at 2.) Inadequate delivery of Plaintiff's prescribed medication threatened his life. (Id. at 4.) Plaintiff seeks fifty million dollars in damages. (Id. at 5.)

### C. Plaintiff's Relevant Grievance History

In support of the motion to dismiss, Defendants produced the declaration of LaKisha Franklin, Grievance Coordinator at JSP, whose responsibilities include "ensuring compliance with the Grievance SOP [Standard Operating Procedure] . . . coordinating the timely investigation and response to inmate grievances; and maintaining information and records regarding inmate grievances." (See doc. no. 26-2, Franklin Decl. ¶ 2.) Ms. Franklin is "familiar with the Grievance SOP and the practices of the [Georgia Department of Corrections] as to inmate grievances [filed] under that document." (Id. ¶ 3.) Ms. Franklin has identified three grievances Plaintiff filed while an inmate at JSP: Grievance Numbers 313836, 316393, and 319149. (Id. ¶11 & Ex. 2.) Plaintiff's grievance history was obtained from the central database, kept per the requirements of the Grievance SOP, which shows "all grievances filed by an inmate during his incarceration, including grievances from all facilities where the inmate has been incarcerated." (Id. ¶ 11.)

Plaintiff filed Grievance Number 313836 on September 8, 2020, alleging that his release date had been incorrectly calculated. (Id. ¶ 12 & Ex. 3.) The grievance was denied on the merits, and Plaintiff acknowledged receipt of the denial on September 29, 2020. (Id.) Plaintiff did not file a central office appeal. (Id.)

Plaintiff filed Grievance Number 316393 on November 2, 2020, alleging JSP nurses were not regularly administering his mid-day insulin shots as prescribed since August 1,

2019.  (Id. ¶ 13¹ & Ex. 4.)  Plaintiff maintains he had tried unsuccessfully for months to obtain a grievance form, but his requests had been denied until "they" found out he had filed his lawsuit.  (Doc. no. 1, p. 2; doc. nos. 5, 7, 41-1.)  Specifically, Plaintiff states, "I was told by the inmate orderly that they did not have any grievance forms and that they would not make any copies to give to me."  (Doc. no. 41-1.)  After investigation of the merits, the warden denied the grievance, and Plaintiff acknowledged receipt of the denial on December 4, 2020.  (Id. ¶ 13 & Ex. 4.)  Plaintiff did file a central office appeal.  (Id.)

Plaintiff's third grievance at JSP, Number 319149, filed on January 4, 2021, alleged Plaintiff did not receive mid-day insulin on January 1, 2021, and that missing mid-day insulin was an on-going problem.  (Id. ¶ 14 & Ex. 5.)  An investigation of the merits concluded Plaintiff had not received his mid-day insulin on January 1, 2021, and the grievance was granted on that basis.  (Id.)

## II.    DISCUSSION

### A.    The Legal Framework for Determining Exhaustion

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing

---

¹Paragraph 13 of the Franklin Declaration contains a scrivener's error stating the grievance was filed November 2, 2021, rather than 2020.  However, the parties' substantive arguments agree the date was November 2, 2020, and the documentation attached to the Declaration confirms the correct year as 2020.

Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520

5

(2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play":  (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation."  Ross v. Blake, 578 U.S. 632, 643-44 (2016).  Here, Plaintiff makes no allegation or arguments under the first two situations.  To the extent Plaintiff argues prison officials refused to provide him with a grievance form, the Court makes factual findings with respect to that allegation below.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with

6

procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  Johnson, 418 F.3d at 1159.

B.     The Administrative Grievance Procedure

As part of the declaration of Ms. Franklin, Defendants have provided a copy and explanation of the applicable Statewide Grievance Procedure, Policy Number ("PN") 227.02, which became effective May 10, 2019.  (Franklin Decl. ¶¶ 3-10 & Ex. 1.)  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  PN 227.02 § IV(C).  The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor.  Id. § IV(C)(1)(c) & (d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § IV(C)(1)(b).  The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id.  The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it.  Id. § IV(C)(1)(e)(i).  The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident.  Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(f)(v).  If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal.  Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but

this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § (C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § (C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

### C.     Plaintiff's Failure to Exhaust

In his complaint signed on October 13, 2020, Plaintiff alleges his insulin was not administered as prescribed from August 2019 through September 2020. (Doc. no. 1, pp. 4 - 5.) Plaintiff acknowledges there is a grievance procedure at JSP, but he states he did not file a grievance because prison officials refused to give him a grievance form prior to filing his lawsuit. (Id.) Under step one of Turner, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate, and moves to step two. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendants have the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Office, -F.4th-, No. 20-12605, 2022 WL 211498, at *6 (11th Cir. Jan. 25, 2022). As explained in detail below, the Court concludes Defendants have carried the burden to show Plaintiff did not exhaust his administrative remedies.

Defendants have shown through the Franklin Declaration that Plaintiff filed three grievances while at JSP: Grievance Numbers 313836, 316393, and 319149. (Franklin Decl. ¶ 11.) Two of the grievances were related to the proper administration of Plaintiff's insulin, numbers 316393 and 319149, both of which were undisputedly filed after Plaintiff filed this lawsuit. (Id. ¶¶ 11, 13-14 & Exs. 4, 5.) Defendants dispute Plaintiff's assertion he was denied a grievance until after he filed the lawsuit not only because he was able to file a grievance related to his sentence computation in September of 2020, Number 313836, but also because there is no evidence showing any prison official would have known Plaintiff filed this lawsuit during the approximately three weeks between when he signed his complaint and when he filed his Grievance Number 316393. Indeed, service of process was not ordered until March 19, 2021, and the United States Marshal did not mail the Notice of Lawsuit and Request to Waive Service of a Summons until April 28, 2021. (See doc. nos. 14, 14-2.) The Middle District of Georgia issued an order on October 26, 2020, that was served on Plaintiff at JSP, but that order made no mention about the topic of Plaintiff's lawsuit. (See doc. no. 4.) Moreover, Plaintiff has not alleged prison officials read his legal mail such that any official at JSP would have known the contents of a letter from the Middle District of Georgia.

When faced with the Franklin Declaration signed under penalty of perjury, Plaintiff's unsworn and unattested response offers no explanation how he managed to file a grievance regarding his sentence when the grievance procedure was allegedly not available to him regarding his medical care. (See doc. no. 41.) Nor does Plaintiff provide any information about the inmate orderly who he claims told him grievance forms were not available during

9

the approximately year-long period he alleges he was unable to obtain a grievance form. (Id.) Plaintiff's belated submission of grievance and appeal receipts filed nearly a year after he commenced the case, as well as medical records, does not address the issue at hand of exhaustion *prior to* commencement of the lawsuit. (See doc. no. 45.) Plaintiff has not shown prison officials refused to provide him a grievance form, and Defendants have shown there was an available administrative remedy.

In any event, even if the Court were to assume for the sake of argument Plaintiff was denied a grievance form prior to filing his lawsuit - a position with no evidentiary support in the record - Plaintiff did not appeal the denial of his November 2, 2020 grievance, Number 316393. Nor did he appeal Grievance Number 319149 to the extent the ruling made a finding only that he had been denied mid-day insulin on January 1, 2021, and did not address his claim of seventeen months of mistreatment or request for release from prison and an award of monetary damages. (See doc. no. 26-2, p. 56.) Thus, Plaintiff did not exhaust the two-part grievance procedure even as to the belated grievances. The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. Johnson, 418 F.3d at 1159.

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could

10

>   simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").

Therefore, based on the above, the Court finds Defendants have met their burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit. Because Plaintiff did not exhaust his administrative remedies with respect to his claims forming the basis of this lawsuit prior to initiating this case, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261. Because the case should be dismissed based on Plaintiff's failure to exhaust, the Court need not address Defendants' unchallenged argument that any official capacity claims for money damages should be dismissed.[2]

---

[2]Plaintiff did not explicitly state whether his claims were brought against Defendants in their individual or official capacity. (See doc. no. 1.)

11

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 26), and this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 3rd day of February, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA